NJProb 12C/D
(5/23)

# United States Probation Office
# United States District Court
# for the District of New Jersey

### Amended Petition for Summons or Warrant for Individual under Supervision

September 18, 2023

**Name of Individual Under Supervision:** Jonathan A. Kirschner     **Docket Number:** 18-00360-001
**Reg. Number:** 70909-050                                          **PACTS Number:** 3728253

**Name of Judicial Officer:**     THE HONORABLE ROBERT B. KUGLER
                                  SENIOR UNITED STATES DISTRICT JUDGE

**Original Offense:**     Count One: Impersonation of a Special Agent of the Bureau of Alcohol, Tobacco,
                          Firearms and Explosives, in violation of 18 § U.S.C. 912, a Class E felony
                          Count Two: Knowingly Bringing False, Forged, or Counterfeit Coins and Bars into
                          the United States, in violation of 18 § U.S.C. 485, Class C felony

**Original Sentence:** Imposed on 01/28/2020; 126 months imprisonment, 36 months supervised release;
Resentenced on 07/06/2021 to 36 months on Count One and 16 months on Count Two, Counts
consecutive, for a total of 52 months custody, 1 year on Count One and 3 years on Count Two, Counts
concurrent, for a total of 3 years supervised release.

**Current Custodial Status:** At liberty

**Special Conditions:** Drug Treatment/Testing, Computer Search for Monitoring Software, Financial
Disclosure, Mental Health Treatment, No New Debt/Credit, Self-Employment/Business Disclosure,
Special Assessment, Restitution - Money, Polygraph Examination, Computer Search, Location
Monitoring Program

**Date Supervision Commenced:** 09/02/2022          **Date Supervision Expires:** 09/01/2025

**Assistant U.S. Attorney:** Jeffrey Bender, 401 Market St., 4th Floor, Camden, New Jersey 08101, (856)
757-5026

**Defense Attorney:** Lori Koch, Federal Defenders Office, 800 Cooper Street, Suite 350, Camden, New
Jersey 08102, (856) 757-5341

## PETITIONING THE COURT:

☐   To issue a warrant
☐   To issue a summons
☒   To amend a previously filed petition to include Violations 12 and 13

NJProb 12C/D – page 2
Jonathan A. Kirschner

**THE COURT ORDERS:**

☐ The Issuance of a Warrant. *THIS DOCUMENT SHALL BE SEALED UNTIL ARREST OF THE INDIVIDUAL UNDER SUPERVISION.*

☐ The Issuance of a Summons Date and time of initial appearance: _____ in Courtroom _____ before Judge _____.

☑ The petition dated _____ and filed with the Court on _____ is HEREBY AMENDED. (as recommended by Probation)

☐ No Action.

☐ Other.

_____          9/18/2023
            Signature of Judicial Officer                                    Date

**COURT ACTION TO DATE:**

On May 30, 2023, a Request for Modifying the Conditions or Term of Supervision with Consent of the Individual Under Supervision (*Prob 12B*) was submitted requesting that Kirschner be submit to the location monitoring program for three (3) months due to his purchase and sale of coins, while also operating a business, as well as his failure to pay the Court ordered restitution. This was ordered by Your Honor on May 30, 2023.

On July 11, 2023, a Report on Individual on Supervision (*Prob 12A*) notifying the Court of Kirschner's non-compliance as it related to his use of an unreported/unmonitored device, new lines of credit without approval of the Probation Office, communication with someone undergoing a federal investigation for sales of counterfeit coins, failure to attend mental health treatment, the confiscation of the unmonitored device, and failure to be truthful.

**DETAILS OF VIOLATIONS:**

| Violation Number | Nature of Noncompliance |
|---|---|
| 1 | The individual under supervision has violated the special supervision condition which states **'The defendant shall make restitution in the amount of $14,600. The Court will waive the interest requirement in this case. Payments should be made payable to the U.S. Treasury and mailed to Clerk, U.S.D.C., 402 East State Street, Rm 2020, Trenton, New Jersey, 08608, for proportionate distribution to the following victims in the following amounts: S.D. $2,400.00; S.K. $11,200.00; M.L. $1,000. The restitution is due immediately. It is recommended that the defendant participate in the Bureau of Prisons Inmate Financial Responsibility Program (IFRP). If the defendant participates in the IFRP, the restitution shall be paid from those funds at a rate equivalent to $25 every 3 months. In the vent the entire restitution is not paid prior to the commencement of supervision, the defendant shall satisfy the amount due in monthly installments of no less than $300.00, to commence 30 days after release from confinement.'** |

On May 26, 2023, the Probation Office met with Kirschner regarding his restitution. As of that date, he had a restitution balance of $12,377.96, and he made payments totaling $732.12, which were only from the seizure of his state and federal tax returns. His judgment states he must make payments in the among of $300 per month. During the May 26, 2023 meeting with his probation officer, he made a commitment to comply with the payment schedule – starting on June 2, 2023.

Since that meeting, Kirschner has been provided the login information to submit his payments online, as well as a copy of his judgment and commitment on multiple occasions. On August 20, 2023, Kirschner claimed he needed the information again, since his e-mails "auto delete" after his e-mail has 20 e-mails.

According to OPERA, Kirschner made a $50 payment on June 5, 2023, but has failed to make any other payments since that time. As of this date, Kirschner is currently employed, with monthly net earnings of approximately $1,255.31.

On May 23, 2023, an overview of Kirschner's finances, which included assets and necessary monthly cash flow (including bills) were assessed. Kirschner claimed to have a net monthly income of $1,150, no assets, and no reported necessary bills. However, on August 1, 2023, Kirschner submitted the same forms with assets totaling $11,717.62 (vehicle, stocks, bank account, coin collection) and a net monthly income of $1,203.50. In addition, he submitted liabilities for his credit and monthly bills (rent, groceries, electric, heat, water, telephone, basic cable, commuting expenses, auto insurance, clothing, loan payments, credit card payments) in a total of $2,184.00 which he claimed also included his monthly restitution payment. Kirschner also attached the following statements: Credit One credit card; Columbia Bank account; CashApp; and a payment plan for Kikoff with no details or business cover letter.

On August 18, 2023, the undersigned officer questioned the discrepancies and asked for proof of payment of his monthly bills (proof of rent payment, payment towards utilities, etc.). Kirschner stated he was confused and thought it was the household bills, and not what he pays/contributes to. As of this date, Kirschner only pays $30 per month towards his cell phone bill, which he provided a receipt for. According to his computer monitoring logs, Kirschner's mother pays his cell phone bill. Kirschner was directed to complete these forms again, excluding any bills he does not contribute to.

During the review of Kirschner's computer internet logs between June 8, 2023, and September 1, 2023, Kirschner makes purchases daily on various websites for items including household necessities, e.g. laundry detergent, but also makes purchases for items not of necessity, e.g. a police scanner for a vehicle, jewelry, numerous pairs of expensive shoes, and a significant amount of coins. The prices of these purchases range from $50 to an upwards of $330.

A review of Kirschner's credit card and bank statements indicate purchases from various vendors, e.g. Temu (clothing), Shopify, AliExpress (place where coins, coin holders are sold/purchased), Pirate Ship Postage, Cleo (cash advance), Dave (cash advance), Empower (cash advance), Amazon Marketplace, Prime Video, BeenVerified (people search platform), Peacock (video streaming service), and Grammarly (writing assistant program), 17Track (shipment tracker but can view that it is used by Kirschner for coin purchases).

On August 31, 2023, the undersigned officer found through Kirschner's computer logs, that he has also invested in stocks with Bitcoin and Robinhood, both of which are cryptocurrency and stock cell phone applications.

As of the writing of this report, Kirschner earns $1,255.31, and after the payment of his credit cards, loan, and cell phone bill, he has a positive cash flow of $1,000.31.

The Probation Office has determined this conduct constitutes a **Grade C violation.**

2    The individual under supervision has violated the standard supervision condition which states **'You must allow the probation officer to visit you at any time in your home or elsewhere, and you must permit the probation officer to take**

any items prohibited by the conditions of your supervision that he or she observes in plain view.'

Previously, on September 7, 2022, during the Probation Office's initial inspection, an airsoft gun was observed in plain view. A conversation was had about removal of this airsoft gun, and that any other weapons could pose a risk to public safety. Kirschner was informed he was not to possess any weapons in his residence during his term of supervision.

On July 19, 2023, an unannounced home inspection was conducted by the undersigned officer. During this inspection, the undersigned officer observed what appeared to be a firearm on the side of Kirschner's bed. Kirschner was asked why where a firearm was next to his bed, which he stated it was a airsoft gun and used for his protection given recent burglaries on his street. Upon inspection, the undersigned officer identified this as a Winchester Air Pistol, which contained metal bb-pellets. This item was seized by the undersigned officer and placed into evidence.

The Probation Office has determined this conduct constitutes a **Grade C violation.**

3 The individual under supervision has violated the mandatory supervision condition which states **'You must not commit another federal, state, or local crime.'**

On July 19, 2023, Kirschner possessed a Winchester Air Pistol, which contained metal bb-pellets. According to New Jersey Code of Criminal Justice Section 2C:39-1f, Kirschner unlawfully possessed an airsoft gun which possessed enough force to cause serious injury to a person.

The Probation Office has determined this conduct constitutes a **Grade B violation.**

4 The individual under supervision has violated the mandatory supervision condition which states **'You must not commit another federal, state, or local crime.'**

On September 7, 2022, Kirschner was directed by the Probation Office to remove all weapons, including any airsoft guns, from his residence. He was also informed that while on supervision, he was not to have access or possess such weapons.

The Probation Office has determined this conduct constitutes a **Grade C violation.**

5 The individual under supervision has violated the special supervision condition which states **'You must refrain from the illegal possession and use of drugs, including prescription medication not prescribed in your name, and must submit to urinalysis or other forms of testing to ensure compliance. It is further ordered that you must submit to evaluation and treatment, on an outpatient or inpatient basis, as approved by the U.S. Probation Office. You must abide by the rules of any program and must remain in treatment until satisfactorily discharged by the Court. You must alert all medical**

NJProb 12C/D – page 6
Jonathan A. Kirschner

professionals of any prior substance abuse history, including any prior history of prescription drug abuse. The U.S. Probation Office will supervise your compliance with this condition.'

On July 21, 2023, and August 4, 2023, Kirschner submitted urine specimens at Oaks Integrated Care, which tested positive for marijuana. In addition, he submitted urine specimens on August 1, 2023, and August 11, 2023, which were negative for marijuana. According to Kirschner's counselor, she spoke with the laboratory, which confirmed new use of marijuana between his positive results, based on the nanogram levels.

On August 11, 2023, the undersigned officer questioned Kirschner about his positive urine specimens. Kirschner stated he was in a vehicle with his coworkers, with the windows closed, and they were smoking marijuana.

The Probation Office has determined this conduct constitutes a **Grade C violation.**

6    The individual under supervision has violated the special supervision condition which states **'You must cooperate with the U.S. Probation Office in the investigation and approval of any position of self-employment, including any independent, entrepreneurial, or freelance employment or business activity. If approved for self-employment, you must provide the U.S. Probation Office with full disclosure of your self-employment and other business records, including, but not limited to, all of the records identified in the Probation Form 48F (Request for Self-Employment Records), or as otherwise requested by the U.S. Probation Office.'**

Shortly after the commencement of Kirschner's supervised release, the Probation Office was contacted by the Certified Collectibles Group/Numismatic Guaranty Company (NGC) due to their concern that he was engaged in the buying and selling of counterfeit coins on Etsy marketplace. The coins sold by Kirschner were counterfeits, and were presented in holders displaying NGC's hologram, NGC's name, insignia and false invoice number and grading number that implies NGC has received and graded the coin. NGC confirmed their agency did not grade any of the coins being sold by Kirschner.

The Probation Office conducted an independent investigation of Kirschner via his monitored device (cell phone). A review of his computer monitoring report displayed the buying and selling of coins on platforms such as Etsy and Shopify, as well as evidence of Kirschner purchasing packaging materials and holograms to present coins as authentic.

On May 26, 2023, the Probation Office met with Kirschner, and he admitted to purchasing, packaging, and selling coins on various online platforms, under his own coin business. He admitted that although he was selling the coins as a replica, he packaged them in a manner where a consumer could reasonably believe they were authentic. He was directed by the Probation Office to remove any profile on the online platforms that he was using to sell coins, destroy all materials used for the packaging of coins and to dispose of all coins meant for resale by May 29, 2023. He did not report this earned income to the Probation Office.

Thereafter, a forensic monitoring search was conducted of Kirschner's monitored device and the seized HP All in One computer seized in Kirschner's residence on June 5, 2023. The monitoring report reflects that Kirschner continued to discuss sales of coins, matching NGC and holograms, and even arranged for a "business partner" in Florida to handle the shipment, and payment was made via CashApp via text message, online applications, and an email. Kirschner purchased a theft protection stamp roller (June 28, 2023) as well as multiple coin boxes, labels, and label makers.

Kirshcner operated as internationalicllc@gmail.com which a signature included "Cheers! Jonathan Kirschner (c)2023-ICC Inc.TM" and a second email, jonathan38844@gmail.com with a signature that included "Sincerely, Jonathan Kirschner |Business Development/CEO|".

Kirschner sent a message via AliExpress to a consumer that stated "will contact you once things settle down and we will continue" when asked by the consumer about the sale of coins. In addition, he continues to have communication, through this date, with individuals regarding labels and coins on the email internationalicllc@gmail.com. This email is also identified as "Texas Coins" in Kirschner's email outbox.

A review of Kirschner's computer monitoring logs reflect that on July 21, 2023, Kirschner utilized a business card maker and creator application. On August 28, 2023, Kirschner created on a template a business card for a "Jonathan Rosario" as the Head of Numismatic Specialist for Mega Coin Group out of Delray Beach, Florida, 33444. Kirschner also included his personal email on this business card. His computer monitoring logs also reflect continued communication from both listed emails in communication about coins.

In addition, Kirschner also amends a document listing himself, his personal information, and what appears to be a legal term of use and privacy policy for the Mega Coin Group, LLC, listed with the year 2023.

To this date, and on multiple dates and times, Kirschner continued to save labels, photographs of coins, and save authenticity numbers/holograms. Kirschner has claimed he purchases coin holders, saves NGC numbers, and creates labels, to keep his collected coins stored.

The Probation Office has determined this conduct constitutes a **Grade C violation.**

7    The individual under supervision has violated the special supervision condition which states **"You must submit to an initial inspection by the U.S. Probation Office, and to any unannounced examinations during supervision, of your computer equipment. This includes, but is not limited to, personal computers, personal digital assistants, entertainment consoles, cellular telephones, and/or any electronic media device which is owned or accessed by you. You must allow manual searches of these devices and the installation on your computer of any hardware or software systems which monitor computer use. You must pay the cost of the computer monitoring program. You may use a computer in connection with employment if approved by the U.S. Probation Office, provided you notify your employer of the nature of your conviction and any computer related restrictions that are imposed on**

you. **The U.S. Probation Office will confirm your compliance with this notification requirement."**

On June 5, 2023, an unannounced home inspection was conducted by the undersigned officer. During this inspection, the undersigned officer noticed a HP-All in One computer. Kirschner admitted this device is his but stated the device did not turn on. This device was not disclosed to the Probation Office, and therefore, had not been monitored by the Probation Office's computer program to monitor his computer use.

The Probation Office has determined this conduct constitutes a **Grade C violation.**

8   The individual under supervision has violated the standard supervision condition which states **'You must answer truthfully the questions asked by your probation officer.'**

Regarding the HP All in One computer that was seized by the undersigned officer on June 5, 2023, Kirschner initially informed the undersigned officer that the computer was not working. Kirschner was directed to attempt to turn the computer on, which he pretended to push the on button. The undersigned officer then found the button and pressed to turn on the computer, which it did. Kirschner then admitted that the computer was working but stated he has not used it in a long time. Review of the computer reflect that Kirschner used this computer through at least June 4, 2023.

The Probation Office has determined this conduct constitutes a **Grade C violation.**

9   The individual under supervision has violated the standard supervision condition which states **'You must allow the probation officer to visit you at any time in your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.'**

During the June 5, 2023, home inspection, Kirschner was found to have in his possession approximately 20 prepackaged coins with holograms and labels identifying the coins, as well as other packaging equipment. Kirschner stated these items were for his coin collection and were not seized. It is noted, however, as of May 26, 2023, Kirschner was directed to remove all coins, packaging equipment, holograms, and labels, from his residence.

In addition, as outlined in Violation 7, Kirschner possessed a computer, which was not known to the Probation Office, and therefore was not being monitored. This device was seized by the undersigned officer for a forensic examination.

Additionally, by Kirschner's bedroom window there were petri dishes that appeared to have mold. Kirschner admitted he purchased a kit to grow hallucinogenic mushrooms, which "failed". The petri dishes were not seized, due to concern of officer safety, and local law enforcement was notified. A computer monitoring report also confirmed that Kirschner searched hallucinogenic mushrooms for purchase via Amazon.

The Probation Office has determined this conduct constitutes a **Grade C violation.**

10    The individual under supervision has violated the standard supervision condition which states **'You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.'**

During the review of Kirschner's internet logs between June 8, 2023, and June 28, 2023, Kirschner continued to have text message conversations and e-mail exchanges with a man labeled as "Rick Etsy" in his cell phone, real name Richard Greenwood. These conversations included Greenwood's meetings with the federal government, after his arrest for bringing false, forged, or counterfeit coins or bars into the U.S. In addition, Kirschner also asks for Greenwood's receipts so Kirschner can assess how Greenwood should present his plea to his attorney. Kirschner was directed to stop all conversations with Greenwood.

The Probation Office has determined this conduct constitutes a **Grade C violation.**

11    The individual under supervision has violated the special supervision condition which states **'You are prohibited from incurring any new credit charges, opening additional lines of credit, or incurring any new monetary loan, obligation, or debt, by whatever name known, without the approval of the U.S. Probation Office. You must not encumber or liquidate interest in any assets unless it is in direct service of the fine and/or restitution obligation or otherwise has the expressed approval of the Court.'**

During the review of Kirschner's internet logs between June 8, 2023 and September 1, 2023, Kirschner applied for monetary loans and/or cash advances with the following companies: MoneyLion, 5KFunds, LendingGroup, RoarMoney, Kikoff, 247EzLoan, 500Loan, New Day Loans, Dave, Premier Mastercard Credit Card, Milestone Credit Card, Destiny Mastercard, Midnight Blue and Ruby Steel Visa cards (crypto currency credit cards), Borrow (cash advance), and a debt consolidation service. Kirschner admitted during a home inspection on June 5, 2023, that he had applied for the loans, but was not awarded these loans. Kirschner also admitted to applying for a cash advance card, which appears as FloatMe on the internet logs, and that he applied for loans in order to pay his restitution. Kirschner was directed by the undersigned officer not to apply or open any additional lines of credit, loans, or accrue any additional debt, without prior approval by the Probation Office.

On August 18, 2023, Kirschner's Equifax credit report by the Probation Office. According to this report, since the commencement of supervision, Kirschner opened seven (7) new lines of credit with the following credit or loan entities: September 2, 2022, Fingerhut, a charge account, passed due with a balance of $246; February 14, 2023, Capital One, a credit card, passed due with a balance of $530 and a credit limit of $300 (account closed in March 2023 by a credit grantor); July 14, 2023, Note Loan, a loan, with a $600 balance; April 26, 2023, Kikoff, a credit card, $0 balance; April 26, 2023, Kikoff, a charge off account,

with a balance of $180; April 26, 2023, Kikoff Lending, a secured card, with a balance of $90; and July 16, 2023, Credit One, with a $528 balance.

Kirschner's CashApp bank statement reflects that Kirschner has more bank accounts not disclosed to the Probation Office. Kirschner has reported a bank account with Columbia Bank x2085, but his CashApp statements reflect accounts labeled as Columbia State Bank x5433 and x0505. In addition, a Visa Debit x5433, also appears on this statement.

On August 31, 2023, the undersigned officer found through Kirschner's computer logs, that he has also invested in stocks with Bitcoin and Robinhood, both of which are cryptocurrency and stock cell phone applications.

Kirschner did not have permission to apply or open any new lines of credit, loans, or accrue any additional debt at any time during his term of supervision.

12

The individual under supervision has violated the special supervision condition which states **'You must refrain from the illegal possession and use of drugs, including prescription medication not prescribed in your name, and must submit to urinalysis or other forms of testing to ensure compliance. It is further ordered that you must submit to evaluation and treatment, on an outpatient or inpatient basis, as approved by the U.S. Probation Office. You must abide by the rules of any program and must remain in treatment until satisfactorily discharged by the Court. You must alert all medical professionals of any prior substance abuse history, including any prior history of prescription drug abuse. The U.S. Probation Office will supervise your compliance with this condition.'**

On September 11, 2023, Kirschner was directed to submit a urine specimen, unobserved, during an unannounced home visit. After about waiting ten minutes, and even once the home visit was nearing the end, Kirschner stated he did not have to go. Kirschner was direct to report to the probation office and submit a urine on September 12, 2023, at 10AM. Kirschner insisted he could go to treatment and submit a urine specimen, which was denied by the undersigned officer. Kirschner confirmed he would arrive at the probation office.

On September 12, 2023, Kirschner contacted the undersigned officer approximately 45 minutes prior to his scheduled report time and stated he was just informed he had to drive his father to a medical appointment. Kirschner was informed he only had to submit a urine specimen, and he was able to then go to the medical appointment. Kirschner confirmed he would arrive at the office.

Kirschner arrived 15 minutes late to the scheduled appointment. Kirschner further explained to the male officer that could not provide a urine specimen, as he was "pee shy", as this was a medical condition, if he was observed. Kirschner was asked if he was observed previously in custody, treatment providers, or previous officers. Kirschner stated through a mirror and that all parties were aware of his medical condition, so no one directly looked at him. Kirschner stated he would go to have water and return.

Approximately one hour later, Kirschner contacted the undersigned officer and stated he walked two blocks away for a beverage since the vending machines were out in the courthouse. In addition, he had to get home for his father's medical

appointment and then go to work. Kirschner asked for permission to go to his treatment provider to submit a urine specimen, or for the undersigned officer to come to his residence and test him on September 13, 2023, and that request was denied by the undersigned officer. The undersigned officer explained that Kirschner was provided ample time to report and submit a urine specimen in the probation office.

Approximately two hours later, Kirschner went to his treatment provider and submitted a urine specimen, that was not observed. Kirschner submitted the instant cup results to the undersigned officer via text message.

The Probation Office has determined this conduct constitutes a **Grade C violation.**

13

The individual under supervision has violated the standard supervision condition which states **'You must follow the instructions of the probation officer related to the conditions of supervision.'**

On September 11, 2023, Kirschner asked to report to his treatment provider, Oaks Integrated Care, when he failed to submit a urine specimen during a home visit. This request was denied by the undersigned officer, and he was directed to report to the probation office for an observed urine screening.  On September 12, 2023, although Kirschner reported to the probation office, he attempted to reschedule the appointment prior to arrival, and furthermore, failed to submit a urine specimen once he learned the collection would be observed. Although given time to have water, Kirschner did not report back to the probation office, as he stated he had to take his father to a medical appointment.

After failing to report back to the probation office, Kirschner than reported to Oaks Integrated Care to submit an unobserved urine specimen, which he was previously directed to not do by the undersigned officer.

The Probation Office has determined this conduct constitutes a **Grade C violation.**

## INDIVIDUAL UNDER SUPERVISION'S COMMENTS AS TO ALLEGED VIOLATION(S):

Kirschner admitted to selling coins through early June 2023, when the sanction and modification was proposed to the Court for location monitoring. Kirschner admitted to possessing the airsoft Winchester pellet gun for protection as he claimed residences were being burglarized on his block. Kirschner stated that while he possessed the HP All-In-One computer, he had not used it in some time and claimed it did not power on or work. In regard to additional lines of credit, Kirschner stated he attempted to open new credit cards and loans since commencement of supervision, but none were approved. In regard to Kirschner's stalled drug screenings, Kirschner stated he is "pee shy" and that is why he was not observed by even the Bureau of Prisons.

## STATUTORY PROVISIONS AND CASE LAW:

The individual under supervision's exposure to all penalties is presented in the Appendix.

Pursuant to 18 U.S.C. § 3583(i), the power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the individual under supervision to serve a term of imprisonment and, subject to the limitations in subsection (h) of 18 U.S.C. § 3583, a further term of

supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation. Reference is made to the Third Circuit's ruling in *U.S. v. Merlino*, 785 F.3d 79 (3rd Cir. 2015).

18 U.S.C. § 3583(e)(3) provides for revocation of a term of supervised release if the court finds by a preponderance of the evidence that the individual under supervision violated a condition of supervised release. Accordingly, the court will require the individual under supervision to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously spent on post-release supervision.

Cases in which the original offense of conviction was committed on or after April 30, 2003, are subject to the provisions of the PROTECT Act (Pub. L 108-21, 117 Stat. 650), which amended 18 U.S.C. § 3583(e)(3) with regard to the custodial exposure upon revocation. The amount of custodial time available to the Court upon revocation is the maximum time authorized at 18 U.S.C. § 3583(e)(3). This available time is not reduced by the custodial time imposed as a result of any prior revocation of supervision. Reference is made to the Third Circuit's ruling in *U.S. v. Williams*, 675 F.3d 275 (3rd Cir. 2012).

Pursuant to 18 U.S.C. § 3583(e)(3), if revoked, Jonathan A. Kirschner is facing a maximum statutory penalty of 1 year imprisonment for violating the term of supervised release attached to the underlying conviction on Count One, a Class E felony. The individual under supervision is also facing a statutory maximum penalty of 2 years imprisonment for violating the term of supervision attached to the underlying conviction on Count Two, a Class D felony. Pursuant to the Third Circuit's ruling in *U.S. v. Dees*, 467 F.3d 847 (3rd Cir. 2006), a District Court has the authority to impose consecutive prison sentences upon revocation of concurrent terms of supervised release which resulted from the imposition of multiple terms of imprisonment. The aggregate exposure upon revocation for the individual under supervision is therefore 3 years.

Pursuant to 18 U.S.C. § 3583(h), when a term of supervised release is revoked and the individual under supervision is required to serve a term of imprisonment, the court may include a requirement that the individual under supervision be placed on a term of supervised release after imprisonment. The amount of time available for reimposition of supervised release in cases in which the original offense of conviction was committed on or after April 30, 2003, is the maximum term of supervision allowed by statute for the original offense of conviction minus any term of imprisonment imposed upon revocation plus custodial time ordered on prior revocations.

Pursuant to 18 U.S.C. § 3624(e), when multiple terms of supervised release are (re)imposed they must be imposed concurrent to each other.

## POLICY STATEMENT/GUIDELINE PROVISIONS:

The individual under supervision's exposure to all penalties is presented in the Appendix.

The U.S. Sentencing Commission has promulgated specific policy with respect to probation and supervised release violations. Pursuant to § 7B1.4(a) of the guidelines, with a Criminal History Category of III and a Grade A violation, the individual under supervision faces a guideline range of 18 to 24 months custody. For a Grade B violation, the individual under supervision faces a guideline range of 8 to 14 months custody. For a Grade C violation, the individual under supervision faces a guideline range of 5 to 11 months custody.

Upon a finding of a Grade A or B violation, pursuant to USSG § 7B1.3(a)(l), the court will revoke supervised release.

Upon a finding of a Grade C violation, pursuant to USSG § 7B1.3(a)(2), the court may (A) revoke probation or supervised release or (B) extend the term of probation or supervised release and/or modify the conditions of supervision.

Pursuant to USSG § 7B1.1, Application Note #1, and 18 U.S.C. §§ 3563(a)(1) and 3583(d), a mandatory condition of probation and supervised release is that the individual under supervision not commit another federal, state or local crime. A violation of this condition may be charged whether or not the individual under supervision has been the subject of a separate federal, state, or local prosecution for such conduct. The grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the individual under supervision is convicted in a criminal proceeding. Rather, the grade of the violation is to be based on the actual conduct of the individual under supervision.

Pursuant to USSG § 7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation will be ordered to be paid or served in addition to the sanction determined under § 7B1.4, and any such unserved period of community confinement, home detention, or intermittent confinement may be converted to an equivalent period of imprisonment.

Respectfully submitted,

SUSAN M. SMALLEY, Chief
U.S. Probation Officer

*Erin A. DeSilva*

By:  ERIN A. DESILVA
Senior U.S. Probation Officer

/ ead

APPROVED:

*Steven Alfrey*      9/18/2023
_____
STEVEN ALFREY           Date
Supervising U.S. Probation Officer

# APPENDIX
## Statutory and guideline exposure

VIOLATION GRADE:                    A
CRIMINAL HISTORY CATEGORY:   III

|  | Statutory Provisions | Guideline Provisions |
|---|---|---|
| CUSTODY: | Count One: 1 year<br>Count Two: 2 years. | Count One: 18-24 Months<br>Count Two: 18-24 Months |
| SUPERVISED RELEASE: | Count One: Up to One Year<br>Count Two: Up to 3 years<br>(less any term of imprisonment imposed upon revocation, plus custodial time imposed on prior revocations) | Count One: Up to One Year<br>Count Two: Up to 3 years<br>(less any term of imprisonment imposed upon revocation, plus custodial time imposed on prior revocations) |

VIOLATION GRADE:                    B
CRIMINAL HISTORY CATEGORY:   III

|  | Statutory Provisions | Guideline Provisions |
|---|---|---|
| CUSTODY: | Count One: 1 year<br>Count Two: 2 years. | Count One: 8-14 Months<br>Count Two: 8-14 Months |
| SUPERVISED RELEASE: | Count One: Up to One Year<br>Count Two: Up to 3 years<br>(less any term of imprisonment imposed upon revocation, plus custodial time imposed on prior revocations) | Count One: Up to One Year<br>Count Two: Up to 3 years<br>(less any term of imprisonment imposed upon revocation, plus custodial time imposed on prior revocations) |

VIOLATION GRADE:                    C
CRIMINAL HISTORY CATEGORY:   III

|  | Statutory Provisions | Guideline Provisions |
|---|---|---|
| CUSTODY: | Count One: 1 year<br>Count Two: 2 years. | Count One: 5-11 Months<br>Count Two: 5-11 Months |
| SUPERVISED RELEASE: | Count One: Up to One Year<br>Count Two: Up to 3 years<br>(less any term of imprisonment imposed upon revocation, plus custodial time imposed on prior revocations) | Count One: Up to One Year<br>Count Two: Up to 3 years<br>(less any term of imprisonment imposed upon revocation, plus custodial time imposed on prior revocations) |